C. H. Baldwin v. Commissioner.
C. H. Baldwin v. Commissioner
Docket No. 16445.
United States Tax Court
1949 Tax Ct. Memo LEXIS 229; 8 T.C.M. (CCH) 306; T.C.M. (RIA) 49079; March 29, 1949
*229 Thomas J. Bailey, Esq., and M. D. Harris, C.P.A., Olds Tower Bldg., Lansing, Mich., for the petitioner. Wesley A. Dierberger, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency of $41,713.60 in petitioner's income and victory tax for 1943 by including in his incomes for 1942 and 1943 all the profits of a business conducted under the form of a partnership in which his wife and three minor children held a one-fifth interest each and to which they had each contributed a one-fifth undivided interest in net assets of the business given to them by petitioner. Petitioner contends that the partnership should be recognized for tax purposes. The proceeding was submitted upon a stipulation and exhibits, which we incorporate by reference as findings of fact, and an oral testimony. On this record we make the following Findings of Fact Petitioner, a resident of East Lansing, Michigan, filed his income and victory tax return for 1943 with the collector of internal revenue for the district of Michigan. He is married to Marion Baldwin and is the father of four children: William Walter, born in 1922; *230 Helen Eurania, born in 1923; Elizabeth Ann, born in 1932, and another daughter not here involved. Since 1921 petitioner has acted as a sales agent or manufacturer's representative for various firms, and prior to the opening of a business office in 1928 was assisted in clerical matters by his wife. In 1941, as for several previous years, he was engaged in the purchase of lumber, fuel oil and steel and its resale to automobile manufacturers, without, however, taking physical delivery of the merchandise; in selling pipe, bolts and imitation leather on a commission, and in the manufacture and sale of a laundry compound known as "White Mule." This compound was produced in a building which petitioner owned, and two salesmen were employed to sell it on a commission. Otherwise petitioner had no one in his business who called on customers. Petitioner's son, William, manifested an early interest in his father's business, and was encouraged to expect participation. While in school he helped out when needed, and during the summer of 1938 assisted petitioner in experimental work on a power brake for trailers. He entered Syracuse University in September 1940; changed to the University of Michigan *231 in January 1941, and during the three summer months of 1941 travelled for petitioner over the northeastern states, getting over $5,000 of orders for "White Mule," and receiving commissions for his work. He resumed his studies in business administration at the University of Michigan thereafter; was employed by the Reo Motor Company during the summer of 1942 in unloading trucks and on an assembly line; then sold "White Mule" again receiving commissions for three weeks, and reentered the University of Michigan in September. He was a member of the Reserve Officers Training Corps at the University, and was mustered into active military duty on March 18, 1943. He joined the air corps in January 1944 and saw service in Europe and the Philippines. After release from the Army on terminal leave late in July 1946, he worked a week in his father's business, and then returned early to the University for football practice. He reentered in September. In January 1947 he returned to the business as a saw operator; was advanced to assistant foreman, and in August was sent to Camden, Arkansas, as manager of a plant manufacturing export cases for automobiles, a business which petitioner began in Lansing *232 in July 1942. During the Christmas holidays of 1941, petitioner told William briefly and privately, that he intended to form a partnership, giving a one-fifth interest in it to him and a like interest to his mother and two sisters "so that he would show no partiality." He had previously told his wife of his intention to do so, and advised the two daughters about the gift "after it was all over." Some months later petitioner had an attorney draw up instruments to implement his intention. On July 16, 1942, he signed and acknowledged a bill of sale "effective" January 1, 1942, conveying for "one dollar and other good and valuable consideration" an undivided one-fifth interest in his business to his wife, to his son and to each of his two daughters. The assets and liabilities covered by this transfer consisted of: ASSETS
Cash
$ 5,564.98
Accounts Receivable
9,278.68
Notes Receivable
1,497.50
Inventories
2,154.59
200 Shares Electric Boat
2,875.00
Automobiles
2,849.55
Office Equipment
245.82
Total
$24,446.12
LIABILITIES
Accounts, Notes Payable and
Accruals
$11,195.85
Depreciation Reserve
606.34
Net worth
12,643.93
Total
$24,446.12 Petitioner *233 made this conveyance as a gift. On July 20, 1942, but "effective as of January 1, 1942," petitioner, his wife, son and the two daughters made and signed an agreement to carry on, as partners, a general jobbing, brokerage and manufacturing business at Lansing under the name of C. H. Baldwin Company. Petitioner as "general partner" and each of the others as "special partners" agreed to contribute $2,528.81 in cash and property; petitioner was to act as manager and receive an annual salary of $5,000; net profits, after deduction of the salary, were to be distributed equally and losses borne equally to the extent of each special partner's contribution; losses in excess thereof were to be borne by petitioner. Petitioner or employees designated by him were authorized to make contracts and draw checks and commercial paper for the partnership; no partner was to enter into any bond or otherwise subject the partnership's property to attachment or execution without the consent of all. Each partner was entitled to inspect the books of account at any time and to receive a statement of condition indicating the value of his share in December of each year. In the event of a partner's death the survivors *234 had the right to purchase the deceased's share for book value plus 6 per cent from the last preceding accounting. The assets and liabilities covered by petitioner's conveyance of July 16, 1942, were transferred to the partnership, and were recorded as its assets and liabilities "as at January 1, 1942." They constituted all of petitioner's business assets and liabilities on that date with the exception of land and buildings ($5,000 less $625 depreciation) and the mortgage payable on them ($2,318.66). One-fifth of the net worth ($12,643.93) of these transferred assets, or $2,528.78, was recorded as each partner's contribution. On July 20, 1942, petitioner was appointed guardian of his three minor children by the Probate Court of Ingham County, Michigan, and on September 28, 1942, the five individuals filed a certificate that they were conducting a business under the assumed name of C. H. Baldwin Company. After the United States entered the war, petitioner anticipated that his principal customers, the automobile manufacturers, would change their activities and requirements, and that he in turn would have to prepare for changes in his business to meet war demands. About June 1942 he *235 installed machinery and began the manufacture of cases for shipping army trucks overseas as a subcontractor for the Reo Motor Company, and thereafter worked on war contracts or subcontracts until 1945. He was busy in searching for and procuring materials; equipping his shop; complying with war-time regulations, and collaborating with inspectors on specifications. He continued, however, to buy and sell lumber, steel, fuel oil; sell pipe, bolts and forgings on commission, and to make and sell "White Mule" as before, but as demand was great, selling required little effort. The net earnings of the business increased from about $20,000 in 1941 to $43,000 in 1942 and $71,000 in 1943. Its gross receipts for those years were about $98,000, $185,000 and $231,000, respectively. In 1943 an additional shop was leased and equipped in which Diesel generators were cleaned and painted and many were sold. Part of petitioner's own building, which was not included in the conveyance to the wife and children, was used in the partnership business, and taxes, insurance and maintenance on it were paid by the partnership. When the partnership agreement was signed, petitioner's son was 20 years of age and *236 his two daughters 18 and 10 years, respectively. The wife and daughters rendered no services to the business. The wife was, however, authorized to draw checks against the bank account. The separate investment accounts opened on the partnership books for the wife, son and daughters were credited with the contribution of $2,528.81, contemplated in the partnership agreement, and thereafter with a share of earnings computed according to the agreement's terms. The books contained no drawing account for any partner except petitioner and showed no withdrawals from capital in 1942 and 1943 by the wife and children. For 1942 petitioner filed a partnership return for C. H. Baldwin Company, showing a net income of $43,313.02, and reported $7,662.60 as the distributive share of his wife and each of his three children and $12,662.60, or $5,000 more, as his distributive share. Among items of income was $1,329 received as rent for part of petitioner's building. For 1943 petitioner filed a like return, showing a net income of $71,367.51, and reported $13,273.50 as the distributive share of his wife and each of his three children and $18,273.51, or $5,000 more, as his distributive share. In individual *237 returns for 1942 and 1943 petitioner and his wife included in their personal incomes the amounts reported on the partnership returns as their respective shares of partnership income, and as guardian petitioner filed individual returns for each of the three children, reporting as their personal incomes the amounts shown as their respective distributive shares of partnership income. The wife and children had never filed a return for any year prior to 1942. Taxes reported due by the wife and children for 1942, 1943 and 1944 were paid by a partnership check signed by petitioner and the amounts were charged on the partnership books against petitioner's drawing account. In 1945 an accountant employed to examine the partnership books, discovered these charges and transferred them as charges to individual accounts of the wife and children. Petitioner's wife and three minor children contributed no vital services and no capital originating with them to the partnership business and exercised no powers of management or control over it. In computing petitioner's income for 1942 and 1943 and in determining petitioner's income and victory tax for 1943, the Commissioner included in petitioner's *238 income the entire net income of the partnership. Opinion Petitioner assails the inclusion of all the partnership profits in his income, arguing that he made valid gifts of assets to his wife and children; that they contributed these assets to the business under a partnership agreement; that the "business" was thereafter conducted as a partnership and publicly registered in their names and his; and that the bookkeeping, bank account and tax returns correctly reflected adherence to the partnership's terms. To be recognizable for tax purposes, however, it is not enough that the gift of assets and the partnership were valid under Michigan law. . It must appear further that the partners truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And if the arrangement was, as here, among members of a family group, it is subject to special scrutiny. Their real intention is a question of fact, and for determining that fact, persuasive circumstances for consideration are whether or not the family members invested capital originating with him, or substantially contributed to the control *239 and management of the business, or otherwise performed vital additional services. Petitioner's wife and children did none of these things. Their contribution to business capital was provided by an undivided interest in the business assets which petitioner gave each for the purpose of contributing it to the partnership. A contribution so provided can not properly be said to have originated with the contributor. ; ; ; ; ; affd. (C.C.A., 6th Cir.), ; certiorari denied, . Management and control of the business remained, as before, with petitioner; the wife and daughters performed no services whatever, and the son, still a minor, rendered very minor services for short periods and at infrequent intervals. Petitioner argues that the son's absence in military service should not defeat recognition of his participation under the holding in ; *240 certiorari granted December 6, 1948, and . But these cases are distinguishable from this, for in each it appeared that the partner son was experienced in the business; had already rendered substantial services and was competent to exercise some management and control. Cf. (promulgated January 10, 1949). Petitioner's son on the contrary had done nothing more than sell "White Mule" for a few months and perform manual labor. Significantly he received a commission on orders procured by him in the summer of 1942 after the partnership agreement had been signed just as he had in the summer of 1941 before it was signed. The sale of "White Mule" produced only a petty part of the business' gross receipts, and even in this limited field we can not accept petitioner's view that the son manifested any ardent interest, for he did not work in his father's business even all of the short free periods which his college courses permitted. After the partnership agreement was signed, he took employment with the Reo Motor Company in the summer of 1942, explaining that his duties there, being of a strenuous nature, would fit him *241 better for participation in college football games. , also cited by petitioner, is readily distinguishable on its facts from this proceeding, for the partnership interests therein transferred by a widow to her son, daughter-in-law and grandchild, originated in a bequest of the widow's deceased husband, and hence did not represent a reallocation by the managing head of the business among family members but rather gifts of parts of a legacy. But this case differs from those cited in a respect of more crucial bearing on the issue. Capital appears here to have been a very minor income-producing factor. The net business assets on January 1, 1942, were carried at a value of only $12,643.93 while gross receipts for the year were over $185,000 and net income over $42,000; in 1943 the corresponding figures were $71,000 and $231,000. It is thus obvious, and indeed the implications of petitioner's testimony so indicate, that his ability and efforts in procuring and selling materials constituted the basis of the business and the source of its income. The capital used was trivial in amount. As the wife and children added *242 nothing to this basis, the partnership agreement represents merely a reallocation of income earned mainly by petitioner's efforts, and should be denied recognition for tax purposes for the reasons set forth in ; ; ; ; affd. (C.C.A., 5th Cir.), ; certiorari denied, . Decision will be entered for the respondent.